In the Matter of the Application of the CITY OF NEW YORK, Respondent, Relative to Acquiring Title in Fee to the Lands Required for the Opening and Extension of Fort Schuyler Road, from West Farms Road to Shore Drive, Borough of The Bronx, City of New York.

M. NATALIE BALCOM and Others, Appellants.

First Department, April 4, 1924.

Condemnation — proceeding by city of New York to acquire land for purpose of widening street — law existing prior to Laws of 1915, chap. 606, applied — Greater New York charter, § 980 (as amd. by Laws of 1909, chap. 394), provides for damages to buildings not situated on parcel taken resulting from regulation of grade of widened portion of street but does not permit compensation for consequential damages to land not taken — remedy given under Greater New York charter, § 980 (as amd. by Laws of 1909, chap. 394), was in lieu of that provided by § 951 — recovery under § 980 bar to recovery under § 951 — award for damage to buildings not sustained by evidence.

As the law existed under the Greater New York charter prior to the repeal and revision of section 980 by chapter 606 of the Laws of 1915, section 951 of the charter applied in the case of an actual change of grade not accompanied by a street opening proceeding, and section 980 applied in the case of an intended regulation of the grade of an existing public street to be carried out in connection with a condemnation proceeding for the purpose of widening the street to be regulated.

In a condemnation proceeding instituted by the city of New York in 1912 to acquire land for the purpose of widening a street, compensation may be made pursuant to section 980 of the Greater New York charter (as amd. by Laws of 1909, chap. 394), for damages to buildings situated on land adjacent to the parcel taken resulting from the regulation of the grade of the widened portion of the street, but compensation is not permitted for consequential damages to the land not taken.

The remedy given by said section 980 of the charter was in lieu of that provided in section 951 thereof, and a recovery under the former section 980 for damages to buildings caused by the intended regulation of the street to the grade established therefor will operate as a bar to the recovery by the owners under said section 951 (since amd. by Laws of 1920, chap. 786) for damages to buildings and improvements caused by the actual grading of the road to its established grade.

An award for damage to buildings which amounts to more than twice the amount testified to by the owners' expert will not be confirmed since there is no legal evidence to sustain it.

FINCH, J., dissents, with opinion.

APPEAL by the claimants, M. Natalie Balcom and others, from so much of an order of the Supreme Court, made at the Bronx Special Term and entered in the office of the clerk of the county of Bronx on the 19th day of May, 1921, as refuses confirmation of the final report of the commissioners of estimate as to parcel damage No. 20-a and returns the report as to that parcel to new commissioners, to consider the subject-matter and make an amended report in relation thereto; and also from so much of said order as refuses confirmation of the final report of the commissioner of assessment as to parcels benefit Nos. 147 and 148, and returns said report to a new commissioner of assessment to make an additional assessment for benefit.

*Edward H. Hawke, Jr.* [*Herbert R. Limburg* of counsel], for the appellants.

*George P. Nicholson, Corporation Counsel* [*Joel J. Squier* of counsel], for the respondent.

McAVOY, J.:

The owners of the damage parcel in a condemnation proceeding instituted by the city of New York in 1912 for the purpose of acquiring title to lands for opening and extending Fort Schuyler road appeal from an order which set aside an award in their favor in the sum of $87,018, which was given, in the words of the report of the commissioners, for " Damage to buildings by reason of the intended regulation of street."

The damage parcel for which this award was made is known as No. 20-a on the damage map. No part of this parcel was acquired by the city for the widening of Fort Schuyler road and the award made by the commissioners, which the court set aside, represents damage to buildings only, and the damage caused is that resulting from the regulation of the grade of the widened Fort Schuyler road. The buildings which appellants complain were damaged were not situated on any parcel taken by the city. The buildings are all situated upon damage parcel No. 20-a, of which no part was taken for the widening. The part of appellants' property which was taken is a narrow strip of land extending the whole length of the front of appellants' property on old Fort Schuyler road and having a frontage on old Fort Schuyler road of 434 feet. It is known in this proceeding as damage parcel No. 20. The damage parcel No. 20-a, over which the controversy

arises, has a frontage on Westchester creek, and runs along the westerly side of Appleton avenue.  The property at the date of vesting of title in the city in 1915 consisted of a plant for manufacturing artificial ice and had a capacity of about 50 tons a day, and also a coal pocket having a capacity of 2,000 tons.  The enterprise is what is commonly carried on in sparsely settled neighborhoods — a retail coal yard and a wholesale ice plant.  Before the old Fort Schuyler road was widened through this proceeding, the surface grade of the old road was practically on a level with the surface of the claimants' property.  While the trial was progressing before the commissioners in this proceeding, the city actually regulated and graded the now widened Fort Schuyler road to the newly-established grade, and the grading was completed in August, 1919.  The profile map used in this proceeding shows that the grade of old Fort Schuyler road was raised from seven and seven-tenths inches to as high as eleven and two-tenths inches, varying from Westchester creek front to the easterly end of the property.  Some of these buildings which are claimed to have been affected by this change of grade, stand some distance back from the widened road; the storage house, the office building and the stable of the plant were within two or three feet of the widened road.  The ice storage house was 78 feet away.  The loading platform of the icehouse was 132 feet.  The boiler house was 160 feet and the coal pockets were 230 feet from the south line of Fort Schuyler road as acquired in this proceeding.  The appellants own all the land, buildings and machinery, but there is a lease running from year to year to a concern called the John S. Bush Manufacturing Company.  This company pays a certain rental for the property and runs the coal pockets and the ice plant.  The corporation which leases the place has three stockholders who are the three owners of the land.  The work of regulating and grading Fort Schuyler road, as has heretofore been pointed out, was in progress while this proceeding was on trial before the commissioners, and the entire work was completed prior the date of the final report of the commissioners, dated November 29, 1920.  The city finally accepted the completed work on August 18, 1919.  More than a year prior to the acceptance by the city of the entire work of regrading in front of damage parcel No. 20-a, the project had so far been carried on that the appellants had to provide means of access to the parcel to permit them to carry on their coal business.  In October, 1917, the manufacturing of ice in the plant was discontinued because of the war, since during the war the Federal government had commandeered all the ammonia, and the coal business alone was thereafter conducted.  The means of access which appellants provided

for their business was a ramp, which began at the office building and back of the office and ran up parallel with Fort Schuyler road, and turned into Fort Schuyler road above the stable. The lessee constructed the ramp, and it consisted of an ash fill with a granite paving on top, the paving being twelve feet wide with three feet of ashes on each side, and the fill varies at the bottom in width from eighteen to twenty-five feet. The ramp occupies eight lots, and it cost $1,300, excluding the cost of the ashes. It was designed to be temporary and began to be used in August, 1918. Prior to the time of the regulation of the Fort Schuyler road the property had three entrances from Fort Schuyler road, but now there is only this one, effected by way of the ramp. Since the construction of the ramp the same quantity of coal is loaded upon wagons, and extra teams are occasionally used to haul up heavy loads, but the volume of business carried on since the ramp was established is about the same as it was before it was constructed, although the cost of carrying on the business is more than it has been heretofore.

As before pointed out, the ice business was discontinued in October, 1917. The commissioners last met in May, 1917. They filed their preliminary report in July, 1918. On the hearing of the written objections to the preliminary report, the commissioners took evidence on the part of the city from one John H. Murphy, a real estate expert, who testified that since his last investigation of the damage parcel 20-a, the grade of Fort Schuyler road had been completed and the ramp or driveway furnished access to the property from the new grade. A blue print of the survey showing the location of the ramp and the elevations of its grade was put in evidence without objection by the owners, now appellants. The preliminary report of the commissioners made before this evidence was given with respect to the changed conditions of damage parcel No. 20-a contained an award of $87,018 as heretofore indicated, being labelled as " Damage to buildings by reason of the intended regulation of street."

The final report of the commissioners did not make any change in the award which they had preliminarily made, but in this report, dated November 29, 1920, they retained as the final award the sum of $87,018 for the same sort of damage, the only difference between the preliminary and final award being that $6,685.88 was added as interest. If the award contains consequential damage to the land remaining after the taking of damage parcel 20, which is the long narrow strip added to the newly-widened road, it is an erroneous award, since claimants cannot be compensated for consequential damages to remaining land not taken caused by

changing the grade of old Fort Schuyler road, but compensation for damage to the remaining land not taken is limited to damage to the buildings thereon caused by the intended regulation of Fort Schuyler road as widened.

When a new street is opened the owner whose land is taken is entitled to compensation for the value of the land taken and for all damages to his adjoining lands caused by the original improvement of the street or by coincident changes in its grade. Once it becomes a public street and its grade is laid out, an owner of lands abutting thereon is not thereafter entitled to any compensation for damages caused to land or buildings by changing its grade.

In the case of a street widening, the compensation for consequential damages to adjoining lands, on account of the use to which the part taken is put, is limited to that caused by raising or lowering the surface of the part taken, over and above the damage caused to the same lands, if any, by changing the grade of the existing public street which is widened.

Old Fort Schuyler road having been a public highway prior to the institution of this proceeding, and the city being possessed of the right to change the grade of the old road without incurring liability to appellants other than such as was imposed by statute, it follows that the only right not theretofore possessed, as against damage parcel No. 20-a, which was acquired in this proceeding, was the right to grade the narrow red strip constituting damage parcel No. 20.

The raising of the surface of the narrow red strip (damage parcel No. 20) to the level of the new grade of the old Fort Schuyler road did not damage the land included within damage parcel No. 20-a to any greater extent than that land would have been damaged by the regulating and grading of the old Fort Schuyler road to the same grade.

At the time of the institution of this proceeding, the only statutes imposing liability on the city of New York for damages caused by changing the grade of an existing public street were the provisions contained in sections 951 and 980 of the Greater New York charter.

Section 951 applied in the case of an actual change of grade not accompanied by a street opening proceeding, and section 980 applied in the case of an intended regulation of the grade of an existing public street to be carried out in connection with a condemnation proceeding for the purpose of widening the street to be regulated.

Section 951 of the charter (Laws of 1901, chap. 466), so far as material provided as follows:

" § 951. * * * After the taking effect of this act there shall be no liability to abutting owners for originally establishing a grade; nor any liability for changing a grade once established by lawful authority, except where the owner of the abutting property has subsequently to such establishment of grade built upon or otherwise improved the property in conformity with such established grade, and such grade is changed after such buildings or improvements have been made." (See, also, Laws of 1912, chap. 483, amdg. said § 951.)

The provisions of section 951 of the charter above quoted never became operative as to old Fort Schuyler road, for the reason that, before any change was made in its physical condition, this proceeding was instituted to widen it, and title in fee to the widened street, which included old Fort Schuyler road, vested in the city.

By the institution of this proceeding, however, the city incurred the liability imposed by section 980 of the charter (as amd. by Laws of 1909, chap. 394) which, prior to the repeal and revision thereof by chapter 606 of the Laws of 1915,* provided, so far as here material, as follows: " If the said commissioners of estimate shall judge that any intended regulation will injure any building or buildings not required to be taken for the purpose of opening, extending, enlarging, straightening, altering, or improving such street or part of a street, they shall proceed to make, together with the other estimate and assessments required by law to be made by them, a just and equitable estimate and assessment of the loss and damage which will accrue, by and in consequence of such intended regulation, to the respective owners, lessees, parties and persons, respectively, entitled unto or interested in the said building or buildings so to be injured by the said intended regulation; and the sums or estimates of compensation and recompense for such loss and damage shall be included by the said commissioners in their report and included in whole or in part in the assessment for benefit, provided the board of estimate and apportionment so specifically directs."

The remedy given by former section 980 of the charter through the institution of this proceeding was in lieu of that provided by section 951 thereof.

Recovery by appellants in this proceeding, under former section 980 of the charter (as amd. by Laws of 1909, chap. 394), for damages to buildings caused by the intended regulation of Fort Schuyler road to the grade established therefor, will operate as a bar to a recovery by them under section 951 of the charter (since amd. by Laws of

---

*See Laws of 1915, chap. 606, §§ 1, 3; Greater New York Charter, §§ 1001, 1010, as added by Laws of 1915, chap. 606.— [Rep.

1920, chap. 786) for damages to buildings and improvements caused by the actual grading of the road to its established grade.

In *Matter of Sixteenth Street* (142 N. Y. Supp. 376) Mr. Justice BLACKMAR (at p. 378) ruled on the damage point in this succinct language: " No matter how much a lot of land may be damaged for building purposes by the regulation of the street in change of grade, the owner is entitled to no damages. The basis for damages is injury to buildings only."

It follows that the only compensation to which appellants are entitled for damage parcel No. 20-a is that provided for by former section 980 of the charter, which provides compensation for damages to buildings by reason of the intended regulation of a street but does not provide compensation for consequential damages to land not taken which are caused by the intended regulation or change of grade of an existing public street.

The only testimony of appellants' witnesses of estimates or damages to buildings was given by Charles A. Berrian, a real estate expert, and Thomas L. Newman, a buildng expert. The estimate of the real estate expert witness as to the amount of damage to buildings was $33,150 on parcel No. 20-a caused by the intended regulation of Fort Schuyler road. This item is the only amount included in Berrian's estimate which represented damage to buildings by reason of the regulation of the grade. The other items in his estimate are the land taken; that is, the narrow strip for the widening, $656.29, and damage to land not taken, $75,771.86. This damage to land represents damage to the land included in parcel No. 20-a. There was no change in the amount of damage to buildings in parcel No. 20-a, as distinguished from the land, although this expert was called and corrected his estimate twice after this. He never varied the amount, $33,150, representing damage to buildings through the regulation of the grade. The item of damage to land is not recognized as a damage in law, as consequential damages to the land affected by mere change of grade cannot be given under any theory of condemnation compensation.

The other expert witness on buildings, Newman, said that the buildings were damaged to the extent of $53,148.01; but in his examination he showed in estimating this damage he had considered that the intended regulation of Fort Schuyler road would destroy access to the buildings, and on that theory he estimated that after grade was changed the buildings would only have a wreckage value. The record shows that a ramp has been constructed which gives access to these buildings. His testimony is based on an erroneous theory and must be disregarded.

The evidence given by the witness Shipley as to damage to

machinery was also based on the erroneous assumption that the machinery of this going concern would be rendered useless by reason of the location of the plant in the situation which he assumed it would occupy without means of access to it from Fort Schuyler road; and since the actuality contradicts his assumption, no damage sum can be predicated on his proof.

It seems to us that since appellants' only legal evidence of damage to buildings by reason of the intended regulation of Fort Schuyler road did not exceed the sum of $33,150, the award of $87,018 has no legal evidence in the record to sustain it and should not have been confirmed.

The commissioners of course are not bound by the evidence of any expert and may fix values from their own view of the premises, but the argument is not to be regarded as persuasive that this award which amounts to more than twice the value put upon it by the owners' expert is the result of independent examination and appraisal by the commissioners in the absence of some indication of such a finding by them.

We think the order should be affirmed, with ten dollars costs and disbursements.

MERRELL and MARTIN, JJ., concur; FINCH, J., dissents.

FINCH, J. (dissenting):

While agreeing with the majority of the court as to the rules of law applicable, yet it seems to me that there was a question of fact presented to the commissioners which they were in a better position to determine, and which they have carefully and deliberately determined, and there is ample evidence to support their finding. Machinery which is affixed to a building is a part thereof, and hence the issue of fact was the amount of damage to the buildings including the machinery which was a part thereof, caused by the change of grade. The appellants' property prior to the change of grade had three means of access to the highway at grade, whereas after the change of grade it had but one possible means of access, by way of a ramp, which the appellants' testimony showed was at an almost prohibitive grade requiring the assistance of extra horses to make it and not wide enough to permit two trucks to pass one another. Appellants further adduced evidence that the property could not be operated commercially under ordinary business conditions, and hence the ice business, discontinued during the war, had not been resumed, and the coal business was being conducted under difficulty and at an increased cost. Mr. Berrian, an expert testifying in behalf of the appellants, placed the damage to the buildings by the change of grade at $33,150 and to the

machinery, $54,234, making a total of $97,384.   Another witness placed the damage to buildings at $53,148.01, which with the damage to machinery fixed by a third expert as $42,477, makes a total of $95,625.01.   The commissioners fixed the damage at $87,018, which was based not only on the evidence presented in this record, but upon a view of the premises.

The main objection urged to some of the items of damage above mentioned is that they were arrived at upon the assumption that the plant would have to be discontinued and dismantled, it being pointed out that this had not in fact been done.   But whether or not it was practical to continue the business was one of the very issues which the commissioners had to determine. After the ramp was constructed there was a rehearing, the respondent claiming that the building of the ramp showed that as a practical matter the damages awarded were excessive.   After such rehearing and another view of the premises, the commissioners found the damage to be the same amount.

Since it does not appear that the commissioners have overlooked or disregarded the evidence before them or erred in the theory upon which they fixed the award, it should not be set aside.   (*Matter of City of New York* [*East 36th Street*], 168 App. Div. 463; affd., 217 N. Y. 621.)   As was said in *New York Central & H. R. R. R. Co.* v. *Newbold* (166 App. Div. 193):   " There was a clash of rival experts, not an unusual feature in such proceedings.   Assuming that the theory of damages acted upon was correct, if the commissioners had adopted the figures of the plaintiff's experts they would have awarded much less; if the figures of the defendants' experts, much more.   But it is perfectly well settled that the commissioners are not restricted to a choice between the estimates of warring experts, and are in no sense bound by their opinions.   * * *   Each side in such controversies is prone to retain witnesses most favorable to it, and very often such testimony is but lay advocacy under the guise of evidence.   The commissioners, of course, are to consider the evidence, but in exercise of their own judgment.   And their conclusion, especially when formed after view of the premises   * * *, is not to be disturbed unless they appear to have done injustice by overlook or disregard of all of the evidence before them, or, of course, unless it appear that they have erred in their theory of the award.   * * *   Every intendment is in favor of the report."

I, therefore, vote to reverse the order appealed from, and to reinstate the award.

Order affirmed, with ten dollars costs and disbursements.